Herbert **EADS**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 7, 1956.

J. C. Lawrence, Jamestown, Ira Pittman, Liberty, for appellant.

Jo M. Ferguson, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MILLIKEN, Chief Justice.

The appellant, Herbert Eads, was convicted of the offense of involuntary manslaughter for the killing of Bennie Luttrell at Rough Ridge in Casey County on February 12, 1956, and sentenced to one year in jail and fined $500. The unfortunate and unintended killing occurred as the result of an argument during "a little old sorry crap game" in which the two men were participants along with several other sportsmen. The medical testimony is undisputed that Bennie died of a basal brain hemorrhage, the "result of a sudden forcible blow to snap the head back or forward."

Bennie had been drinking moonshine whisky before his appearance at the crap game, and still had a pint of it available for current consumption. The evidence of the fifteen eyewitnesses differs sufficiently to present a clear-cut issue of fact for the jury as to whether the appellant acted in self-defense. The Commonwealth witnesses declare that appellant hit Bennie several times, kicked him in the groin, and one or two witnesses even say that the appellant also hit Bennie with a pole.

On the other hand, the appellant and his witnesses say that Bennie flourished a knife and attempted to stab the appellant who backed up, fell backward over a grapevine and kicked Bennie in the groin when Bennie tried to fall on him with the knife. Concededly, both men were prostrate on the ground and the fatal blow was struck by appellant's fist after the combatants had climbed back on their feet. The appellant said he could not be sure whether Bennie wielded a knife at that time. The medical evidence disclosed that Bennie had not been kicked in the groin, but rather the thigh. It seems pretty clear that Bennie was drunk at the time and that appellant also had been drinking. Bennie died on the spot after the appellant hit him.

In view of the number of eyewitnesses who testified together with the testimony of the physician who performed the

autopsy, the jury certainly did not have to speculate as to who and what caused Bennie's death as the appellant contends in urging reversal of his conviction. Nor is there any reasonable doubt as to appellant's guilt. There was sufficient evidence that the appellant was the aggressor to justify the jury's finding. The law applicable to this case is rather well summarized in Gregory's Criminal Law, page 108, Section 96, where it is said:

"* * * When death is caused from an act likely to cause death, the party responsible is guilty of murder though there were no intention to kill, but if death unexpectedly result from an act, not ordinarily or reasonably calculated to produce death, the offense is ordinarily involuntary manslaughter. Thus the hands and feet not being deadly weapons, one beating another with them and unintentionally causing death is guilty of involuntary manslaughter only, but might be found guilty of murder if the manner in which he used them or the relative size and strength of the parties were such as to render the act likely to cause death or great bodily harm, or if there were an intent to kill."

■ Objection was made to the Commonwealth using testimony given before the grand jury as a basis of cross-examination of its own witnesses. The trial judge allowed the use of the grand jury testimony apparently on the theory that the Commonwealth had been taken by surprise by the testimony of one witness it had introduced and, on that theory, we do not find use of the grand jury testimony prejudicial here. In fact, Criminal Code of Practice, § 110, expressly authorizes such use of a grand jury transcript.

■ Objection also is made to the alleged statement of the Commonwealth's attorney in his argument to the effect that "the jury has to believe Bennie Luttrell was going to kill Herbert Eads before you can find him (Eads) not guilty." The argument was not transcribed so we do not have the context in which the alleged statement was made, but even if the statement be taken alone, apart from its context, it is within the reasonable license allowed counsel in argument. The jury had the court's instructions as its guide, which undoubtedly took care of any such imprecise expressions of steamed-up counsel.

The judgment is affirmed.

MONTGOMERY, J., not sitting.